Norris, J.
The issues upon which this action was tried in the common pleas are to be found in the amendment to the petition filed November 13th, 1897, the answer thereto, and the reply.
The petition, after reciting such facts as are necessary to jurisdiction, alleges that the defendant owned and operated its railroad across West Putnam Street, a public thoroughfare in the city of Findlay, and had, at the time named, across this street its main track and various sidings and switches. That the safety of its employes required that the defendant construct at this point a safe and sufficient street-crossing so as to prevent them from getting their feet caught between the planks of the crossing and the rails of the defendant’s track. That on the 7th of September, 1891, defendant company maintained at said street a crossing so negligently and carelessly made and kept, that a space, of about three inches was left between the rails and the plank, and had carelessly failed to bevel the edges of the plank next to the rail, which was necessary to prevent defendant’s servants who were working about this crossing, from getting caught and held fast in the space so left. The defendant, it is alleged, also negligently allowed one of the planks, to remain in the crossing after it had become defective, and a part of it next to the rail had been split off and removed, thereby enlarging the space next to the rail, and niaking it in such form as to render it yet’ more unsafe, and increasing the liability of those of its servants who were employed about this crossing to become fastened and held until run down by the cars.
*206 Plaintiff says that this crossing remained in this condition for a long period of time next before September 7th, 1891; and that defendant knew, and by the exercise of ordinary care could have known of its defective state, and that plaintiff did not know and had no means of knowing of is dangerous condition. On the 7th of September, 1891, and for a short time before, plaintiff was in the employ of the defendant as a brakeman on one of its freight trains. On this day the north bound freight train on which plaintiff was working, arrived at Putnam Street crossing at about the hour of ten o’clock at night. After the engine, and perhaps three cars of this train had passed the switch near this crossing, the train stopped and the conductor, who was in charge of the train, and under whose orders plaintiff was acting, opened the switch for the purpose of detaching an oil car — one of these three, — ■ and throwing it in upon the siding there; and the plaintiff was ordered by the conductor to uncouple this oil car so as to allow it to be run in upon the side track. In compliance with this order, and using due care for his safety, plaintiff stepped between the cars to puli the pin, and while attempting so to do his foot became fastened in the space between the broken crossing plank and ,the rail, and there he was caught and held; and while thus held,the conductor, who knew, or by reasonable care ought to have known, that plaintiff was there between the cars, wrongfully and carelessly signaled the engineer to kick the car, or move it back by sudden and rapid motion. In obedience to this signal of the conductor, the engineer did kick the car back, and it ran down upon the plaintiff and cut off his right foot and leg, and ran over and crushed his left leg, and inflicted upon him permanent and life long injury. He says that said conductor knew, and by reasonable care ought to have known, that to so cause the cars to be kicked back, without first knowing that plaintiff had come from *207 between them, would necessarily result in his great bodily harm.
Plaintiff did not know, and had no means of knowing, and had no reason to believe that the conductor would cause said cars to be kicked back while he was so between them; and it was dark, and he could not see, and did not know of the defective condition of the crossing; and so be says that his injuries were received without fault upon his part, but wholly by reason of defendant’s negligence in so maintaining and keeping said street crossing; and through the negligence of the conductor in directing said cars to be moved in the manner stated. He alleges that he has been to great expense for nursing and medical attention, has suffered pain, and is permanently crippled, and for all this he seeks to recover.
Defendant in its answer admits that it owns and operates its railroad across Putnam Street in Findlay, and that plaintiff was a brakeman in its employ, and was injured at the time alleged; but it denies that he was injured to the extent claimed, and denies all the other averments of the petition.
It says that upon this occasion of plaintiff’s injury, he gave all the signals that put the train in motion, and that the conductor gave no signals.
It pleads that at the time of this accident, and long before, it had in force, and published, a code of rules to govern the conduct of its servants, including brakemen, switch-men, engineers and conductors, in the handling and management of its trains and locomotives and cars and switches, of which rules plaintiff had full knowledge. That by these rules plaintiff was required to use the utmost caution to avoid injury, especially in going between cars to uncouple them while in motion; that brakemen in that duty were to take ample time,and were not to incur imminent and apparent danger in such employment; and that engineers were *208 bound to note and obey and comply with the signals of brakemen while engaged in this species of service.
As to the crossing, defendant says it was not negligently constructed' and not out of repair as plaintiff alleges; but that it was so constructed and kept and was at the time of this accident in the best condition to afford safety to those who crossed, and to defendant’s servants who might be employed at that place, and to defendant’s trains and those who were passengers upon them. That if there was negligence in and about the uncoupling of this car, it was chargeable to the plaintiff; and that his injury resulted from his own negligence in failing to observe the rules of the defendant which were prescribed for his safety, and with which it was his duty to comply, and that by his own failure he contributed to the accident which caused his injury,
In his reply plaintiff denies these allegations as to the rules of defendant, and says, that if there were such rules as those detailed in the answer, he had no knowledge of them, and no means of knowing them; and that if there were such ruleB defendant, at the time of plaintiff’s injury, by custom of doing its work, and by direction of those in charge of its trains, had habitually disregarded the same; and at the time of this injury it was the common custom of brakemen in its service to uncouple cars by going between the cars while in motion, to perform that duty; and this being done by the consent of, and under the direction of defendant, was an abrogation of its rules pleaded in the answer. The reply denies the other averments of the answer.
The issues thus tendered were submitted to a jury in the trial court, which was, together with its general verdict, requested to find specially upon particular questions of fact, which, at the request of the parties, were referred to the jury for that purpose by ' the trial court. The jury rendered its verdict for the plaintiff for the sum of *209 $15,000, and returned its written findings of fact that had been submitted.
Thereupon the defendant filed its motion for judgment notwithstanding the verdict, and also its motion in arrest of judgment. Both of these motions were overruled, and the defendant then presented to the court its motion for new trial which was not allowed, and judgment was entered upon the verdict.
To reverse these proceedings of the trial court error is here prosecuted.
As reasons for reversal are assigned in the motion for new trial and in the petition in error, the following: — ■
The verdict for damages is for an excessive amount.
The verdict is against the weight of the evidence and contrary to the law of the case.
The court erred in its charge to the jury.
Error in refusing to charge as requested by defendant.
Error in overruling defendafit’s motion for judgment notwithstanding the verdict.
Error in refusing to arrest the judgment on the verdict.
That the facts stated in the petition are not sufficient to sustain the action against the defendant.
That the general verdict is inconsistent with the special findings of fact returned by the jury.
Error in the rejection of evidence offered by the defendant.
Error in admitting evidence offered by the plaintiff,
And, error in overruling defendant’s motion for new trial.
As to the first assignment of error that the damages as computed by the jury are excessive, courts are slow to disturb a verdict upon this ground, in as much as a remittitur would in all cases equalize the amount of recovery to the injury sustained,and without further comment we refuse to consider this as a sufficient reason to reverse this judgment.
*210 The next assignment is, that the verdict is not supported by the weight of the evidence, and is contrary to law.
We do not concede that the record presents to us a case which warrants this criticism. The jury has eliminated one phase of this case, by finding upon certain of the particular questions of fact which were submitted to it, as the defendant claimed the facts to be.
To the question, “Did the plaintiff catch his foot between the crossing plank and the rail?” The jury answers, “No.”
To the question, “Was there a sliver off of a plank in the main line at Putnam Street crossing substantially as described in the petition?” The answer is, “No.”
To the question, “Was the crossing properly constructed? The jury answers, “Yes.”
“Was the main line crossing at Putnam Street so constructed as to be reasonably safe?” The answer to this question is, “Yes.”
“Was this crossing at the time of the injury so kept in repairs as to be reasonably safe?” The jury answers, “Yes.”
So that the claim of the plaintiff that the Putnam Street crossing was carelessly constructed, and heedlessly suffered by defendant to become out of repair, and that owning to this fault of the defendant,'plaintiff’s foot became fastened between a crossing plank and the rail, and that his injury to a degree is traceable to these conditions and caused by this negligence upon defendant's part, are not elements in this case which this court here may consider in review.
It is claimed by the defendant, that with this out of the case, the controversy tendered by the pleadings is practically ended. That the incomplete and unsafe crossing, and plaintiff’s foot fast in the space between the edge of the broken plank and the rail, was the essential condition of plaintiff’s case, and without it he has no case; and even *211 with it, that the facts recited in his petition are too weak to sustain an action. We do not agree with defendant’s counsel in this view, but are of the opinion that while these allegations as to the crosssing, relate to negligence that is attributable, not to the management of a train, but to failure upon defendant’s part to maintain a safe crossing, which of itself, substantive and independent,is negligence, without reference to the conductor; yet this negligence is not of such character as that it might not combine with the alleged negligence of the conductor, so that both would work the injury to plaintiff in the manner claimed by him. While the defective crossing, had the facts so disclosed it, might have been the proximate cause of the injury; or while the negligent act of the conductor if the evidence so revealed it,might have been the proximate cause of the injury; yet the allegations of the petition which affirm that both together, as one series of facts, conspired to the accident,assert nothing repugnant or contradictory. And so we are of the opinion, that with the defective crossing and its consequence, as claimed by the plaintiff, out of the case, the petition still, without inconsistency, declares the conductor guilty of such negligence as will support the action. So, if the defendant is liable at all, it is liable because of the negligence of the conductor, and upon this rests the plaintiff’s action.
Now, how stands the case upon the evidence; and though to a degree conflicting, what conclusions are sustained by it? Going to this record,and giving a summary of the facts as the jury was warranted in finding them.
It is conceded that this plaintiff, Patrick Mulcahy, was at the time of this accident in the employ of the defendant as a brakeman on its freight 'train, and as such employe he was under the control of, and, in the line of his employment, acting under the direction of the conductor who had charge of said train, and who was his superior. *212 It is admitted that while so employed at the time and place stated in the petition, he sustained the injury of which he complains. His limbs on the rails of defendant’s track were crushed by the wheels of defendant’s car. When the accident occurred, he was between defendant’s cars; the purpose of his presence there was to uncouple one car from the other. The occasion of his presence there was the order given hinf by the conductor to perform that service; the necessity of his presence there was, that the work required had to be done there. The act to be performed was in the line of his employment, and one of the ordinary duties which was called for in that service; and it is not disputed that while thus employed,from some cause or other, he was thrown under the wheels and the injury resulted. Now so far there is no room for controversy.
The plaintiff claims that when he went between these cars they were standing still; that he found the ccupling pin fast by reason of the tension of the train; that necessity and his duty required him to give the engineer, whose locomotive was fastened to the cars, the slack signal which is a signal understood by railroad men, in instances of this kind, as a request for just sufficient motion to relieve the strain upon the coupling pin and suffer the same to be removed. He says that immediately following this, the conductor,without warrant or excuse, gave the engineer the kick signal, which indicates that the requirement is, that a sudden and rapid motion be given to the cars. This kick signal the engineer obeyed; the car was put in quick, swift motion, and he was run down and hurt; and all this while the conductor who ordered him to go there knew, or by ordinary care ought to have known that he was between these cars.*
The defendant maintains that the conductor gave no signals at all upon this occasion; that the signals,whatever were given, were given by the plaintiff himself. That if the train *213 was put in rapid motion,it was upon plaintiff’s signal to that effect, or, was the result of the engineer, the fellow servant of the plaintiff, not understanding the signal so given by the plaintiff; and that the accident was caused by the negligence of the plaintiff himself, or, by the negligence of the plaintiff and engineer, or alone by the mistake of the engineer, and not by fault of the conductor; and that in either event the defendant is excused from liability. It goes without the saying, that if this accident was occasioned by the negligence of the engineer, the defendant, as the evidence puts the case,is not liable; and it is without doubt, that if, by the negligence of the conductor, and without fault upon plaintiff’s part, the injury was caused, the defendant is responsible.
It is equally clear that the conductor knew that plaintiff was engaged in uncoupling these cars; he knew the character of that service and its requirements and dangers. And it was his duty before he gave any signal to put those cars in quick and rapid motion, to know that Mulcahy was not between them. He had no right to act upon a suspicion or upon a supposition, but a man of ordinary prudence under like circumstances would only have acted upon knowledge and conviction. He knew that it was the purpose to uncouple this car and kick it upon the siding and there leave it; he himself had ordered this done, and he knew just whht was necessary to accomplish it. He knew that one thing was to uncouple the car; without this, his order could not be executed. He knew that at this duty plaintiff was employed; he knew and had every reason to know that until this car was uncoupled Mulcahy’s duty, by his order, would call him right to the spot where he was hurt; yet this conductor says he did give the engineer a signal to kick that car onto the siding while he was yet in ignorance as to whethér Mulcahy had or had not succeeded, and he could have known for the asking, he says so himself; but he *214 made no effort to find out. He says he saw plaintiff give a signal, and then he gave the kick signal. He does not say that plaintiff’s signal was a kick signal; he says that it was not the kick signal; that it was not exactly a slack signal; but whatever it was, from his own testimony, he was then, and is yet, not able to understand its meaning, and in the face of that fact, he was not justified in putting the cars in motion.
The engineer says that Mulcahy gave the kick signal, but in this he is controverted by the evidence of both Mulcahy and the conductor. Plaintiff says he gave no kick signal,the conductor says the same. The engineer says he answered a kick signal; the conductor says he did give a signal of that character. The two signals, one of which the engineer answered by rapidly starting this car, were given at about the same time, and by the testimony of two against one, the signal answered must have been the kick signal given by the conductor. So that the jury in finding that the conductor was guilty of negligence, is sustained by the weight of the evidence.
The jury finds that the engineer was guilty of negligence, and that might well be; for he swears he saw the plaintiff go íd there, and he was in there when he started the car in motion. And so the jury found that the engineer moved the train upon the signal of the conductor, and not upon the signal of Mulcahy, and that plaintiff received the injury for which he seeks to recover “through the combined negligence of the conductor and engineer.’’
The defendant maintains that the general verdict in fav- or of the plaintiff based upon this conclusion of the jury is contrary to law. Here the court again differs with counsel for defendant. It is the opinion of a majority of the court —for the court is not a unit on this question.
There appears no evidence in this record establishing *215 the fact that this engineer is a superior in the sense contemplated in section 3365-22 of the Revised Statutes. That is to say, there is nothing to show that he is an employe of the company which would meet the definition, as this section is construed in the Margot case, 51 Ohio St., 130.
So that the engineer, in the absence of such fact, stands in this case in relation to plaintiff as that of a fellow servant. If this be the fact, injury of which his acts of negligence are alone the proximate cause, would not place the defendant in a position of liability; but that is not the case at bar, If the engineer was the fellow servant of the plaintiff, his act was in response to the order of the conductor, and in obedience to the direction of the superior of both the defendant and himself; the engineer did the very thing the conductor told him to do. The engineer’s knowledge of the dangerous position of plaintiff, would not leaven up the negligence of the conductor, or excuse him in giving an order, which under the circumstances, to give was negligence; neither would the engineer’s knowledge of the situation taint the care with which plaintiff was acting for his own safety. The negligence of the engineer would simply cut no figure in the matter. Judge Day does not agree with this conclusion. So that a majority of the court holds that the verdict is not against the weight of the evidence, and is not contrary to the law of the case. And we are of the opinion that the special findings of the jury are not inconsistent with the general verdict.
Coming now to the special propositions of law which the defendant requested the trial court to give to the jury as a part of the charge.
The opinion of the court as to some of these special requests is expressed in the disposition of matters already adverted to. To abbreviate, and without further comment, such of them as were proper and addressed themselves to *216 the issues at bar were given. As to the charge itself, the charge, while it manifests no error, yet bears evidence of the difficulty by which the trial court was beset in having forced upon his attention innumerable special requests, a majority of which were laden to the guards with error. In the effort to steer around many of these propositions, the charge is lengthened to a degree that might tend to confuse, but without going into detail, we find no error in it, and the jury seems to have been able to follow it. So far we find no error.
And now coming to the admission and rejection of evidence, we find no error in the rejection of evidence; every fact that has place in the controversy seems to have reached the jury. The opinion of men who have had experience in and are acquainted by personal contact in their every day employment, and by knowledge acquired in this manner, with the running and movement of trains, and the method of handling them; and of the duties of those who are employed in their management, may be given to the jury in a case as the one at bar, when the matter to be decided by the jury, involves the duty under certain circumstances of one who is in control of the movements of a train of cars,or is assisting in the duties that go with its management-But, after having explained the duties that the exigencies require to be performed, the witness may not be called upon for, and give his opinion as to what relation certain facts bear to the controversy between the parties, and how they effect the issues on trial to the jury; and the admission of such evidence is error.
We find this question on page 189 of the bill of exceptions, put in re-direct examination to one of plaintiff’s witnesses: “If the conductor gave the engineer the signal at that time which made him violate his duty, would the conductor be violating his duty if he didn’t know that the man was out?” Over defendant’s objection the witness *217 answered, “He would”. In the same examination,on page 192, the plaintiff puts this question: “I will ask whether the engineer would have a right to suppose having seen that signal that this brakeman was still in between the cars when he saw the signal?” The answer over defendant’s objection is: “He has not seen the brakeman yet; he does not know he is out; the signal does not show he is out.”‘ On page 196, to the same witness, plaintiff puts this question: “Now, if the man was still between the cars and the conductor gave the signal which you say he had no right to give, and the engineer obeyed that signal which you say he had no right to obey, what is the fact as to whether that conductor did or did not violate the customs of the company?” Over defendant’s objection the witness answered, “He did.” And elsewhere,notably on pages 199, 201, 202, 230 and 235, are questions of the same import and effect propounded by plaintiff to his witness, and answered over the objection of defendant.
A. & J. Blackford, John B. Gockrum, W. E. Hackee dorn, and Doyle, Seoti & Lewis, for Plaintiff.
Einley, Beer & Bennett, Hurd, Brumback & Thatcher, and John N. Doty, for Defendant.
Now, to admit this evidence was error. The answers to these questions were expressions of opinion by the witness as to the merits of the controversy, and in so doing the witnesses were assuming in a certain sense the position of jurors. With this exception we find no prejudicial error ■' in the record, but on this ground the case is reversed.